■ INDUSTRIAL CREDIT COMPANY, Appellant, v. J. A. D. CONSTRUCTION CORP., Respondent. — In this action to replevin certain chattels sold under a conditional sales contract, plaintiff appeals from an order of the Supreme Court, Queens County, dated August 8, 1967, and from part of a second order of said court dated September 19, 1967. The first order granted defendant's motion for summary judgment on its second counterclaim (for damages for plaintiff's having sold certain chattels located in the State of Maine in violation of section 79 of the Personal Property Law), directed an assessment of damages thereon and severed said counterclaim from the action. Plaintiff's appeal from the second order is from so much thereof as, upon reargument, adhered to the original decision. Appeal from order dated August 8, 1967 dismissed as academic, without costs. That order was superseded by the order on reargument. Order dated September 19, 1967 modified, on the law, (1) by striking out the last two decretal paragraphs thereof, which severed the second counterclaim from the action and directed that judgment be entered for defendant after an assessment of damages and (2) by substituting therefor a provision that entry

of such judgment shall be held in abeyance pending determination of the entire action. As so modified, order affirmed insofar as appealed from, with $10 costs and disbursements to respondent. The chattels in question were purchased by one Joseph Halpern on July 8, 1961 at a bankruptcy sale in the State of Maine from the debtors in possession. The sales price of $221,696 was paid as follows: a cash payment of $64,000 and a conditional sales contract for the balance. The contract was simultaneously assigned to plaintiff, a Minnesota corporation, and was subsequently filed in both Queens and Nassau Counties, since it appears that the chattels were to be shipped to New York, Halpern's place of business. On October 16, 1961 Halpern sold the chattels to defendant, a New York corporation. The transfer was effected by a written contract, called a "transfer agreement", and was consented to by plaintiff. Of the 27 pieces of equipment purchased by Halpern, 20 were sent into New York State. The reminder of the equipment remained in the State of Maine, the subject of an attachment which was subsequently declared invalid, in connection with a lawsuit between plaintiff's assignor and defendant's assignor. In July, 1963, plaintiff, claiming defendant had defaulted in payment pursuant to the agreement of October 16, 1961, commenced this action to replevy the chattels located in Queens County. Those chattels were seized and sold on August 19, 1963 at a public auction; they were bought by plaintiff. In October, 1963, the chattels located in Maine were seized and purportedly sold in that State. The sole question on this appeal is whether the sale of the equipment located in Maine was governed by section 79 of the Personal Property Law. of New York State. That statute mandates a public auction with certain advertisement provisions. Pursuant to a notice to admit, plaintiff conceded that the equipment located in Maine was sold at a private sale and that the sale was not advertised either in Maine or New York City. At the sale in Maine the equipment was sold for $25,000, part of it to plaintiff for $15,000. No bill of sale, check or receipt exists for the $15,000 purchase by plaintiff. Defendant claims that the equipment sold in Maine was worth, at the time of the sale, approximately $60,000. In the area of conflict of laws our courts employ the "grouping of contacts" theory set forth in *Auten* v. *Auten* (308 N. Y. 155, 161). Under this approach our courts have sacrificed the benefit of rigid adherence to fixed rules and have replaced rigidity with a rule which permits the application of the law of the jurisdiction most ultimately concerned with the outcome of the litigation. This flexible approach, stressing the significant contacts, enables a court to produce the best practical result. In the instant case the preponderance of the contacts between plaintiff and defendant was in New York State. Defendant purchased the equipment from Halpern in New York; plaintiff agreed to the purchase in New York; plaintiff filed the conditional sales contract in New York; the equipment was to be shipped to Halpern's place of business in New York; and the breach of the contract occurred in New York. There is one further point which bears heavily in our holding that the sale of the equipment located in Maine is governed by section 79 of the Personal Property Law. That equipment remained in Maine due to an invalid attachment and apparently not because of any desire on the part of defendant or its assignor (*Lanston Monotype Mach. Co.* v. *Curtis*, 224 F. 403). In holding that the procedure followed in selling the equipment located in Maine violated the provisions of section 79, we go no further than the facts presented in this case. There is support for the plaintiff's argument that the law of Maine should apply to the sale of the equipment located in Maine (McKinney's Cons. Laws of N. Y., Book 62½, Part 3, Uniform Commercial Code, p. 326, § 9–102, Comment). However, we are of the opinion that the facts of this case dictate a contrary result. Section 79 seeks to protect the interests of debtors when property is replevied and sold. The sale

in Maine under which plaintiff purportedly purchased a large percentage of the equipment without the benefit of a bill of sale or recept is some indication of a debtor's need of the protection afforded by this statute. Special Term directed an assessment of damages pursuant to section 80-e of the Personal Property Law. Such assessment should take place, but the entry of judgment thereon should be held in abeyance pending determination of plaintiff's cause of action (CPLR 3212, subd. [e], par. 2). Christ, Acting P. J., Rabin, Hopkins, Munder and Martuscello, JJ., concur.